IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. SAG-20-0306 |
| | * | |
| | * | |
| MICHAEL J. FISHER | * | |
| | ****** | |

## MEMORANDUM OPINION

On September 16, 2020, a grand jury returned an indictment against Michael J. Fisher and others for violation of 21 U.S.C. §§ 846 (conspiracy to distribute controlled substances), 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances), and related firearms offenses including 18 U.S.C. § 924(c)(1) (possession of a firearm in furtherance of drug trafficking). ECF 1. On September 24, 2021, Mr. Fisher appeared in Court and pled guilty to the narcotics charges in Counts One and Two of the Indictment. About one month later, he first wrote to the Court expressing a desire to withdraw his guilty plea.[1] On June 8, 2022, with assistance of his new counsel, Mr. Fisher filed the instant Motion to Withdraw Guilty Plea. ECF 152. This Court has considered that motion, the related briefing, and the arguments made by counsel at a hearing held on August 30, 2022. This Court has also considered the Government's Motion to Find Defendant in Breach of the Plea Agreement, ECF 158 at 17. For the reasons that follow, Mr. Fisher's Motion will be denied and the Government's Motion will be granted.

**I.    Procedural History**

The charges presently pending against Mr. Fisher carry a mandatory minimum sentence of 180 months of incarceration: ten years for the controlled dangerous substance offenses plus an

---

[1] Mr. Fisher's informal correspondence was sent to his counsel and not docketed, in light of its *pro se* nature and the consequences that would potentially ensue from its filing.

additional five-year consecutive sentence for the § 924(c) count. In addition, the advisory guidelines range for the charged drug offenses alone, without any credit for acceptance of responsibility, would be 262–327 months of incarceration (with the potential addition of another five-year consecutive sentence for the § 924(c) offense). On August 11, 2021, the Government offered a plea agreement to Mr. Fisher which would drop the § 924(c) charge, along with certain other charges, in exchange for his plea to the two narcotics offenses. ECF 116. In addition, the plea agreement contained a Rule 11(C)(1)(c) agreement to recommend a sentencing range of 144 to 180 months of total incarceration. *Id.* at 7.

As noted above, after the proceeding was rescheduled from a later date due to a Court conflict, Mr. Fisher appeared before this Court for rearraignment on September 24, 2021. At the rearraignment, Mr. Fisher was placed under oath and advised of the consequences of giving false answers to any of the Court's questions. ECF 134 at 3, 5. He provided the following information, under oath, to the Court:

(1) That he wished to plead guilty to Counts One and Two of the Indictment, *id.* at 4;
(2) That he had reviewed the factual and advisory guideline stipulation with his attorney and did not wish to change any part of it, *id.* at 6;
(3) That he was completely satisfied with the representation of his attorney, *id.*,
(4) That he was in fact guilty of the crimes charged in Counts One and Two of the indictment, *id.* at 22;
(5) That he had agreed that he would not move to withdraw from his plea, *id.* at 24–25;
(6) That nobody had made other promises to him to convince him to plead guilty, *id.* at 25; and
(7) That he had had numerous conversations about his decision to plead guilty with his prior counsel, who had answered all of his questions and provided him with enough time to discuss the plea with him, *id.* at 25–26.

During the rearraignment, the Government provided a factual proffer in accordance with the factual stipulation attached to the plea agreement. *Id.* at 14–21. In the course of that proffer, Government counsel realized an error had been made in the factual stipulation, and the parties

agreed to interlineate the correction. *Id.* at 19, 21. At the end of the factual proffer, this Court asked Mr. Fisher if he agreed that the facts reviewed were true. *Id.* at 21. Mr. Fisher responded, "Some of them." *Id.* at 21. He proceeded to explain to the Court, "I agree, Your Honor, but some of them is not about me. Some of them is not what I really know, but that's a fact based on their investigation." *Id.* at 22. This Court clarified his position, stating, "So you're saying that as far as you know about the facts, they are true, and you don't necessarily know about some of the other things that might have happened outside your presence; is that correct?" *Id.* at 22. Mr. Fisher responded, "Yes, ma'am," and Government counsel agreed that his response was sufficient to establish a factual basis for the plea. *Id.* at 22. At the conclusion of the proceeding, based on Mr. Fisher's representations under oath, this Court found that his plea was a knowing and voluntary guilty plea supported by an independent basis in fact. *Id.* at 27.

About one month later, Mr. Fisher began writing to this Court asking to withdraw his plea, citing the fact that he had only received a "30 page summary" of his discovery. In early January, 2022, Mr. Fisher's attorney sought to withdraw his appearance. ECF 126. This Court granted the motion and appointed new counsel, who entered an appearance on January 14, 2022. ECF 127, 129. On February 10, 2022, Mr. Fisher attempted to file a *pro se* motion to withdraw his guilty plea. This Court did not adjudicate the motion because Mr. Fisher was represented by counsel.

On June 8, 2022, new counsel for Mr. Fisher filed the instant motion to withdraw his guilty plea. ECF 152. Mr. Fisher also filed an affidavit in support of his motion, which stated in relevant part, (1) that he "did not receive from prior counsel copies of all of the discovery;" (2) that he "was not shown all of the discovery by prior counsel," (3) that the only document he "was provided was a summary prepared by prior counsel that was over 30 pages long," (4) that prior counsel told him if he did not sign the agreement as presented, he would have to go to trial; (5) that prior counsel

3

told him the amounts of the drugs in the statements of facts could be corrected later or he could withdraw his plea if the amounts were not corrected; (6) that he did not get to discuss or correct the plea agreement with prior counsel before the rearraignment due to the scheduling change. ECF 157.

The Government opposed the motion, and within its opposition filed a Motion to Find Defendant in Breach of the Plea Agreement, citing the provision of the plea agreement that relieves the Government of its obligations under the agreement if the Defendant seeks to withdraw his plea. ECF 158. Mr. Fisher filed a reply in which he argues that his prior counsel provided ineffective assistance by failing to request authorization to provide copies of the discovery to Mr. Fisher in prison under the terms of Standing Order 2020-01. ECF 160.

## II.     Standard of Review

Federal Rule of Criminal Procedure 11 permits a defendant to withdraw a guilty plea upon showing "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The Fourth Circuit has been clear that the burden of showing a fair and just reason rests with the defendant, and is a "heavy" one. *See, e.g.*, *United States v. Thompson-Riviere*, 561 F.3d 345, 348 (4th Cir. 2009); *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000). A fair and just reason "essentially challenges the fairness" of the rearraignment proceeding. *United States v. Puckett*, 61 F.3d 1092, 1099 (4th Cir. 1995). "[A] properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." *United States v. Bowman*, 348 F.3d 408, 414 (4th Cir. 2003).

The parties agree that the applicable test is the six-factor standard described in *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). Under that test, this Court must consider (1) whether the defendant has offered credible evidence that his plea was somehow involuntary or

unknowing; (2) whether the defendant has credibly asserted his legal innocence; (3) whether the defendant has had close assistance of competent counsel; (4) whether there has been a delay between entry of the plea and the filing of the motion; (5) whether withdrawal will cause prejudice to the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources. *Id.* The Court "typically should balance these factors, along with any other pertinent information, to reach its decision." *Thompson-Riviere*, 561 F.3d at 348.

## III. Analysis

Mr. Fisher contends that *Moore* factors one, three, and four counsel in favor of granting his motion to withdraw his plea. ECF 152 at 4. He contends that his prior attorney had not shown him all of the discovery in the case and did not seek authorization to give him the discovery to keep in his cell. *Id.* at 5, 7. As a result, he posits that "[v]arious activities attributed to him, along with addresses and weapons, may have been committed by or belonged to others, but not to him." *Id.* at 5. He also contends that his attorney had promised to fix issues he had raised with incorrect drug amounts in the statement of facts before he went to court in October, but then when his rearraignment moved three weeks earlier, he had no time to fix it. *Id.* at 5–6. He alleges that his counsel told him the incorrect facts could be corrected prior to his sentencing. *Id.* at 6.

### A. *Moore* Factors

Applying the *Moore* factors to the facts outlined above, Mr. Fisher has not met his "heavy" burden. Each factor is addressed below.

#### 1. Credible Basis to Believe Plea Was Involuntary

Some of Mr. Fisher's proffered facts are credible. This Court fully credits his representations that his prior counsel did not show him "all" of the thousands of pages of discovery in this case, and only provided a 30-page summary of the evidence for Mr. Fisher to possess in

5

jail.  This Court also finds, based on representations of all counsel at the hearing, that Mr. Fisher's prior counsel did not make a request to the Government, pursuant to Standing Order 2020-01, to allow Mr. Fisher to possess copies of any of the discovery documents in his cell.  This Court further finds that Mr. Fisher's prior counsel did review some of the discovery with him before his guilty plea, in addition to providing him the summary document to keep in his possession.

     As to the remainder of his assertions, however, Mr. Fisher has not adduced credible evidence to undermine the voluntariness of his plea.  His present statements to the Court (both those sworn in his declaration and those made in his *pro se* filings) completely contravene the information he provided under oath in court.  *See Beck v. Angelone*, 261 F.3d 377, 395–96 (4th Cir. 2001) (without "clear and convincing evidence to the contrary," a defendant's statements under oath at a Rule 11 proceeding are binding).  In court, Mr. Fisher represented that all of the facts the Government proffered about the case were true to the best of his knowledge.  He now suggests, with no factual support or specificity, that various activities attributed to him "may have" been committed by others, and address and weapons attributed to him "may have" belonged to others.  In court, he represented that he had had numerous conversations with his attorney, had all of his questions answered, and was satisfied with his attorney's representation.  He now suggests that he did not have time to work out corrections he wanted to fix before going to court.  ECF 152 at 5.  These statements are patently irreconcilable.[2]

---

[2] This Court further notes that the extremely favorable terms of this plea agreement lend credence to the notion that this was a knowing and voluntary guilty plea, about which Mr. Fisher may now be having second thoughts.  *See Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (noting, in a different procedural context, that the fact that a plea bargain is "favorable" and that accepting it is "a reasonable and prudent decision" constitutes evidence that the plea was voluntary and intelligent).

In addition, there is reason to question the credibility of Mr. Fisher's statements about advice he purports to have received from his prior attorney. Mr. Fisher's prior counsel is an experienced criminal defense attorney who appears regularly in this Court, and it is simply not believable that he would advise his client to lie to the Court under oath and to then expect changes to be made to the agreed statement of facts after the rearraignment proceeding. More importantly, that notion is belied by the conduct of Mr. Fisher's prior counsel during the rearraignment. Prior counsel readily spoke up at the rearraignment when he believed other issues needed to be addressed with the plea agreement (such as an issue regarding Mr. Fisher's forfeiture agreement). ECF 134 at 23–24. And both Mr. Fisher's prior counsel and Government counsel (along with Mr. Fisher himself) agreed to and interlineated one change to the statement of facts during the rearraignment, suggesting that other factual issues could have been raised and addressed at that time as well. *Id.* at 21. In light of those occurrences, and this Court's observation of Mr. Fisher's demeanor during the rearraignment proceeding, this Court credits the statements he made under oath at that proceeding, not the revised version of events he describes after-the-fact. Thus, the first *Moore* factor does not suggest his plea was unknowing or involuntary, and weighs against withdrawal of the plea.

### 2. Credible Assertion of Legal Innocence

Mr. Fisher does not allege that the second *Moore* factor weighs in his favor. He has not credibly asserted legal innocence, either in the traditional sense of guilt and innocence or as to particular drug quantities that might affect his guidelines calculation. Despite the fact that nearly one year has elapsed since the rearraignment, during which Mr. Fisher has been able to review discovery with his new attorney and has even obtained copies of much of the discovery to review in his cell, he remains unable to identify any particular facts that he now disputes. There is

7

therefore no suggestion that the outcome of the proceeding would have been different had Mr. Fisher had all of his discovery in his cell prior to the rearraignment proceeding, or had he had an additional few weeks to negotiate a statement of facts. *See United States v. Jones*, 717 Fed. App'x 228, 230 (4th Cir. 2018) (affirming the district court's decision to deny withdrawal of a plea in part because the defendant failed "to specify how not being shown the Government's discovery in any way prevented him from entering a [knowing and voluntary] guilty plea."). The second factor, then, weighs in the Government's favor.

### 3. Close Assistance of Counsel

Third, this Court finds that Mr. Fisher has had close assistance of counsel both before and after his guilty plea. Mr. Fisher himself characterized the number of meetings he had with his prior counsel as "numerous" and stated that his attorney spent enough time with him to answer all of his questions. ECF 134 at 25–26. As a result, he opted to enter into a plea agreement providing very favorable terms, capping his possible sentencing exposure at the level of the mandatory minimum sentence after trial. Despite Mr. Fisher's attempt to paint prior counsel's performance as ineffective, there simply is no requirement that an attorney show every page of voluminous discovery to his client, nor that the discovery be provided for the client's possession in jail. And, as noted above, there is no specific suggestion that either of those circumstances prejudiced Mr. Fisher's defense in any particularized way.

Standing Order 2020-01 does not alter the analysis, because it does not impose a requirement that a defense attorney seek to leave all discovery with the client for review in jail. In fact, there could be many strategic reasons why an attorney might choose not to provide copies of thousands of pages of discovery to his client in the context of a particular attorney-client relationship. The fact that Standing Order 2020-01 provides a mechanism for a defense attorney

to request to provide copies of particular documents, then, does not alone create some sort of requirement that counsel make a comprehensive request in order to provide constitutionally adequate representation. In sum, then, as he affirmed under oath at his rearraignment, Mr. Fisher enjoyed close assistance of competent counsel, so the third factor weighs against withdrawal of his plea.

### 4. Delay Before Seeking Withdrawal

Turning to the fourth factor, there has been some meaningful delay between the entry of Mr. Fisher's plea and the filing of his motion to withdraw the plea. Even Mr. Fisher's initial letter expressing a desire to withdraw his plea was not sent until approximately one month after his rearraignment. That one-month delay approximates the six-week period the Fourth Circuit characterized as "long delayed" in *Moore*. 931 F.2d at 248. At best, then, the Court would deem the delay factor neutral and would not find it weighs in Mr. Fisher's favor.

### 5. Prejudice to the Government

Withdrawal of the guilty plea would cause some prejudice to the Government. Because nearly one year has elapsed since the rearraignment, witness recollection likely has deteriorated. While this factor is not significant enough to be dispositive on its own, it certainly weighs in favor of denying withdrawal.

### 6. Waste of Judicial Resources

This Court would not, of course, permit the waste of judicial resources to outweigh any degree of unfairness to a defendant. But here, as detailed above, this Court finds no unfairness in holding Mr. Fisher to his knowing and voluntary guilty plea. This Court thus finds that the sixth factor also weighs against allowing this plea to be withdrawn. This Court cannot condone the practice Mr. Fisher now says he employed: coming into Court and telling untruths under oath in

order to accept a favorable guilty plea, only later to seek its modification or withdrawal. While this Court believes Mr. Fisher's instant motion stems from a simple change of mind rather than a nefarious plan to mislead the Court into accepting an unfounded guilty plea, it cannot countenance either scenario without risking the waste of judicial resources.

Because this Court concludes that the Rule 11 plea colloquy was properly conducted and that none of the six *Moore* factors weighs in favor of withdrawal, Mr. Fisher's motion to withdraw his plea must be denied.

### B. Motion to Find Defendant in Breach

With respect to the Government's Motion to Find Defendant in Breach of the Plea Agreement, the filing and adjudication of this motion to withdraw is an unequivocal breach of the plea agreement's terms. The agreement states, "Between now and the date of the sentencing, the Defendant . . . will not move to withdraw from the plea of guilty or from this Agreement." ECF 116 ¶ 17. It continues:

> If the Defendant engages in conduct prior to the sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C) . . . ."

*Id.* ¶ 18. In light of the serious consequences for breach, this Court specifically advised Mr. Fisher, prior to adjudicating this motion at the hearing, what the sentencing ramifications could be. After having an unfettered opportunity to confer with his attorney, Mr. Fisher opted to proceed forward with his motion. Thus, this Court finds, by a preponderance of the evidence, that by filing a motion to withdraw his plea and pursuing that motion through the hearing, Mr. Fisher has violated paragraph 17 of his plea agreement. The Government is therefore not bound by the provisions of

the plea agreement, including its agreements to various reductions based on acceptance of responsibility in paragraph 6c and its agreement to the Rule 11(c)(1)(C) sentencing range in paragraphs 9 and 10.

Any other potential effects of this Court's ruling can be assessed as this case proceeds forward. This Court will order that the Government, on or before September 20, 2022, advise as to its intentions with respect to the remaining counts of the indictment to which Mr. Fisher has not pled guilty. This Court further notes that, to the extent there is any ambiguity in the record as to which specific facts Mr. Fisher agreed to at his rearraignment with respect to the foreseeable drug quantity, the Government may need to be prepared to adduce evidence at sentencing to substantiate its position as to the applicable sentencing guidelines.

## IV. CONCLUSION

For the reasons stated herein, Mr. Fisher's Motion to Withdraw his Plea, ECF 152, is DENIED and the Government's Motion to Find Defendant in Breach of the Plea Agreement, ECF 158, is GRANTED.

Dated: September 6, 2022

/s/
Stephanie A. Gallagher
United States District Judge